```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT BECKLEY
```

**UNITED STATES OF AMERICA**

**v.**                                              **CRIMINAL NO. 5:11-00082**

**THOMAS HARRAH**

<u>**SENTENCING MEMORANDUM OF THE UNITED STATES**</u>

The United States hereby submits this Sentencing Memorandum.

**I.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

    **A.    <u>Nature and Circumstances of the Offense and the History and Characteristics of the Offender</u>**

Defendant made false certifications in pre-shift and on-shift examination books on over 200 occasions over a two year time span. He was not a section foreman and he had badly failed the foreman's examination in August 2007. He received very low scores on the majority of the categories on the examination. He scored less than 70 out of a possible 100 points in nine areas including general mining, roof control, ventilation, mine gases, and explosives. The exam results are attached as exhibit A.

Despite failing the exam he began to act as a section foreman in January 2008. He made up a foreman's number and used this to sign the required examination books. He certified that he had completed the required inspections which involved identifying hazardous conditions. He continued to sign these examination books

until August 2009, signing books on more than two hundred occasions.

When he was transferred to a new mine, he created another foreman's number, this time taking someone else's card, photocopying it and doctoring it so that it appeared it had been issued to him. He used this new number three times. When agents from the FBI and MSHA interviewed him about these false certifications, he initially lied about the circumstances by which he came to have the false foreman's number. At a second interview he admitted his false statements and provided an accurate recounting of how he created the foreman's numbers that he used.

On each of the over 200 occasions that Mr. Harrah conducted pre-shift and on-shift examinations, a crew of men went down into the mine relying on the safety examination of Mr. Harrah. He was not certified by MSHA or OMHST to conduct any of those safety examinations or to report on any of those pre-shift or on-shift safety reports. Mr. Harrah knew he had failed the foreman's examination. He knew he was not qualified to spot safety hazards in that mine. Yet, he allowed his crew of men to rely on his examinations.

Defendant's actions circumvented the laws and regulations that the government has put in place to protect the health and safety of coal miners in a dangerous industry. Congress enacted the Federal Mine Safety and Health Act of 1977 (the Mine Act), because "there

is an urgent need to provide more effective means and measures for improving the working conditions and practice in the Nation's coal or other mines in order to prevent death and serious physical harm, and in order to prevent occupational diseases originating in such mines." The Mine Act. In 2006, Congress enacted the Mine Improvement and New Emergency Response Act of 2006 (Miner Act), requiring mine rescue teams and emergency response plans and increasing penalties for some safety violations. This legislation was passed in response to mine accidents such as the Sago incident in West Virginia. The Federal Mine Safety and Health Administration (MSHA), reported at least some mining fatalities in West Virginia in every one of the past ten years, including 35 last year (2010). www.msha.gov/stats/charts/coalbystates.pdf, last visited on August 24, 2011. There have been five coal mining fatalities in West Virginia already this year. Id. The Mine Act requires that a certified mine foreman or assistant mine foreman conduct pre-shift and on-shift examinations at the mine. 30 U.S.C. § 75.360. These examinations are conducted to insure the mine is safe, free of explosive gas and other hazards which can affect the health and safety of miners. Id. The examiner is required to check for methane gas, measure the air current and determine the air is traveling a proper course, insure the oxygen level is life supporting, insure the mining laws are being complied with, and examining the work areas for any hazardous conditions, and once

3

identifying a hazardous condition, taking action to correct or eliminate the hazard. Id.

The efficacy of these regulations depends on them being followed in good faith by those who work in the industry. Defendant failed completely in this regard. Defendant, however, has accepted responsibility for his offenses. He has also fully cooperated with the FBI and MSHA.

In addition to defendant's lack of qualifications to conduct these safety examinations, he was working at a mine whose safety record was significantly worse than other similarly sized mines in West Virginia. Exhibit B. Exhibit B contains an analysis of the UBB mine done by MSHA compliance specialist Scott Johnson, that compared its safety record to that of other similarly sized mines. In the two-year period that defendant worked as a section foreman at the UBB Mine, the mine was issued 284 violations that were categorized as serious and substantial, the highest category, compared to an average of 175 for other mines, and 62 elevated citations, compared to an average of 9 at other mines. Exhibit B. These citations illustrate the risks of underground mining, the risks that existed at this mine in particular, and the importance of having properly trained foreman to identify and correct safety hazards.

### B. Sentencing Factors in 18 U.S.C. § 3553(a)(2)-(a)(4)

A sentence that includes a term of imprisonment within the guideline range of 10-16 months, or which substitutes community

confinement or home detention per U.S.S.G. § 5C1.1(d)(2) (for sentences in Zone C of the Sentencing Table) for one half of a guideline range term of imprisonment, would meet the statutory objectives of 18 U.S.C. § 3553(a)(2).

  **C.** **The Need to Avoid Unwarranted Disparities**

A sentence within the guideline range as described above would meet this objective.

  **D.** **Restitution**

Restitution is not an issue in this case.

**II. VARIANCE**

The United States notes that defendant has reserved the right to argue for a variance in his case. The United States intends to respond to any such request at the sentencing hearing.

**III. SENTENCING HEARING**

The United States does not intend to call witnesses for the hearing and anticipates that the hearing will last approximately 30 minutes.

         Respectfully submitted,

         R. BOOTH GOODWIN II
         United States Attorney

         /s/ Blaire L. Malkin
         BLAIRE L. MALKIN
         Assistant United States Attorney
         WV Bar No. 10671
         300 Virginia Street, East
         Room 4000
         Charleston, WV 25301
         Telephone: 304-345-2200
         Fax: 304-347-5104
         Email: blaire.malkin@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "Sentencing Memorandum of the United States" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this the 24th day of August, 2011 to:

> Mary Lou Newberger
> Federal Public Defender
> 300 Virginia Street, East
> Room 3400
> Charleston, WV  25301

> /s/Blaire L. Malkin
> BLAIRE L. MALKIN
> Assistant United States Attorney
> WV Bar No. 10671
> 300 Virginia Street, East
> Room 4000
> Charleston, WV 25301
> Telephone:  304-345-2200
> Fax:  304-347-5104
> Email:  blaire.malkin@usdoj.gov

6